IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:18-CV-00273-RJC-DSC

| | |
|---|---|
| CS TECHNOLOGY INC. AND SITEHANDS INC., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| HORIZON RIVER TECHNOLOGIES LLC, | ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM AND RECOMMENDATION

**THIS MATTER** is before the Court on Plaintiffs-Counterclaim Defendants' "Partial Motion to Dismiss Counterclaim Plaintiff's Second Amended and Supplemental Counterclaim" (document #102) as well as the parties' briefs and exhibits.

This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1), and this Motion is ripe for disposition.

Having fully considered the arguments, the record, and the applicable authority, the undersigned respectfully recommends that the Motion to Dismiss be <u>denied</u> as discussed below.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Accepting the factual allegations of the Second Amended and Supplemental Counterclaim as true, the parties entered into a Master Services Agreement and Statement of Work (together, the "Agreement"), effective July 15, 2016. Plaintiffs agreed to perform services related to updating technology infrastructure at Defendant's Massage Envy Franchising LLC locations nationally. On

June 12, 2017, Plaintiffs informed Defendant that they were suspending performance of the Agreement because Defendant owed a significant outstanding balance. This litigation ensued with Plaintiffs seeking to recover over $1 million in outstanding invoices.

Defendant counterclaimed that Plaintiffs "engaged in a pattern and practice of submitting false invoices for [their] services [to Defendant] in an effort to recoup mounting losses on the project[.]" Defendant alleges that invoices from August 2016 through May 2017 included fraudulent charges that were part of a larger pattern and practice of fraudulent billing directed at Defendant and other customers. This scheme had begun no later than 2013 and is ongoing. Plaintiffs directed their employees as well as subcontractors and independent contractors working on the project to bill travel time as labor and submit other false charges in order to inflate their billable hours.

Defendant asserts a counterclaim for violation of the RICO statute, 18 U.S.C. §1961, et seq., as well as counterclaims under state law for breach of contract, fraud/intentional misrepresentation, negligent misrepresentation, and unfair and deceptive trade practices.

Plaintiffs have moved to dismiss Defendant's RICO counterclaim.

## II. DISCUSSION

In reviewing a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563. A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains enough facts to "state a claim to

relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In Iqbal, the Supreme Court articulated a two-step process for determining whether a complaint meets this plausibility standard. First, the court identifies allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555) (allegation that government officials adopted challenged policy "because of" its adverse effects on protected group was conclusory and not assumed to be true). Although the pleading requirements stated in "Rule 8 [of the Federal Rules of Civil Procedure] mark[] a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 678-79.

Second, to the extent there are well-pleaded factual allegations, the court should assume their truth and then determine whether they plausibly give rise to an entitlement to relief. Id. at 679. "Determining whether a complaint contains sufficient facts to state a plausible claim for relief "will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief,'" and therefore should be dismissed. Id. (quoting Fed. R. Civ. P. 8(a)(2)).

The sufficiency of the factual allegations aside, "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." Sons of Confederate Veterans v. City of Lexington, 722 F.3d 224, 228 (4th Cir. 2013) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)). Indeed, where "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations, a claim must be dismissed." Neitzke v. Williams, 490 U.S. at 328; see also Stratton v. Mecklenburg Cnty. Dept. of Soc. Servs., 521 Fed. Appx. 278, 293 (4th Cir. 2013)). The court must not "accept as true a legal conclusion couched as a factual allegation." Anand v. Ocwen Loan Servicing, LLC, 754 F.3d 195, 198 (4th Cir. 2014).

A civil RICO claim has four essential elements: "(1) conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity." Whitney, Bradley & Brown, Inc. v. Kammermann, 436 Fed. Appx. 257, 258 (4th Cir. 2011) (per curiam) (citation omitted). Plaintiffs argue generally that a contractual dispute does not give rise to a RICO claim. As this Court has explained, such a "narrow construction of RICO is contrary to the Supreme Court's interpretation of the statute." R.J. Reynolds Tobacco Company v. Market Basket Food Stores, Inc., Case No. 5:05CV253-V, 2006 U.S. Dist. LEXIS 61927, **29-30 (W.D.N.C., Aug. 21, 2006) (citing H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 248-49 (1989) (rejecting argument that § 1962(c) required an organized crime nexus and clarifying that while "the perceived need to combat organized crime" was the impetus for enacting RICO, Congress drafted RICO broadly enough to encompass a wide range of criminal activity). "As long as [Defendant] is able to allege facts in support of the requisite elements of its RICO claims, [it] is entitled to prosecute this case as a RICO action and pursue full advantage of the remedies provided under civil RICO." Id.

RICO "has become a tool for everyday fraud cases brought against respected and legitimate 'enterprises.' Yet Congress wanted to reach both 'legitimate' and 'illegitimate' enterprises. The

former enjoy neither an inherent incapacity for criminal activity nor immunity from its consequences. The fact that § 1964(c) is used against respected businesses allegedly engaged in a pattern of specifically identified criminal conduct is hardly a sufficient reason for assuming that the provision is being misconstrued." Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 499 (1985) (holding plaintiff stated a RICO claim against joint venture business partner and its officers for fraudulent overbilling) (internal quotes and citations omitted). See also Dillon v. BMO Harris Bank, N.A., 16 F. Supp. 3d 605 (M.D.N.C. 2014) (ruling plaintiff properly stated a RICO claim against banks that facilitated ACH transfer of funds to and from lenders that the banks knew or should have known were making usurious payday loans); In re Arizona Theranos, Inc., 308 F. Supp. 3d 1026 (D. Ariz. 2018) (operator of pharmacy and developer of blood tests who shared common purpose to market and sell unreliable blood tests were subject to RICO claim); Allstate Ins. Co. v. Palterovich, 653 F. Supp. 2d 1306 (S.D. Fla. 2009) (adjudging defendant medical clinics and their associates who participated in conspiracy to submit fraudulent invoices to plaintiff insurance companies liable under RICO).

Plaintiffs also contend that Defendant has not sufficiently pled the pattern or enterprise requirements. Where as here, a RICO claimant alleges predicate acts of mail or wire fraud, those predicate acts must be pleaded with particularity. Adolphe v. Option One Mortg. Corp, No. 3:11-cv-418-RJC, 2012 U.S. Dist. LEXIS 165689, **15-17 (W.D.N.C. Nov. 20, 2012). "[T]he 'circumstances' required to be pled with particularity . . . are "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999) (internal citations omitted). However, "the Court may relax the particularity requirement of Rule 9(b) where the matter pled is particularly within the knowledge of the defendant." Bridgetree,

Inc. v. Red F Mktg. LLC, No. 3:10-CV-228-FDW-DSC, 2010 WL3081372, at *5 (W.D.N.C. Aug. 6, 2010) (internal quotation omitted). Moreover, non-fraud elements of a RICO claim, such as the enterprise and pattern elements, "may be pled pursuant to the less-stringent notice pleading standard of Rule 8." WW, LLC v. Coffee Beanery, Ltd., No. CIV.A. WMN-05-3360, 2012 WL 3728184, *13-14 (D. Md. Aug. 27, 2012).

Defendant alleges with particularity that Plaintiffs along with their employees, subcontractors and other independent contractors engaged in an ongoing, open-ended scheme to defraud Defendant and other customers through a pattern of intentional overbilling beginning in at least 2013. See Second Amended and Supplemental Counterclaim at ¶¶ 93, 109–12, 114–27, and 169 (document #92). Defendant has satisfied the pattern element of their RICO claim. See Allstate Ins. Co. v. Weir, No. 5:07-CV-498-D, 2008 U.S. Dist. LEXIS 91270, *5 (E.D.N.C., Nov. 10, 2008) (allowing a Section 1962(c) claim to proceed where plaintiff insurance company alleged that defendant chiropractor, his practice, and other associates submitted "inflated medical invoices containing false and excessive charges"); Rush-Presbyterian St. Luke's Med. Ctr. v. Ramasean Nursing Serv., Inc., No. 91 C 5158, 1992 U.S. Dist. LEXIS 1246, *2-3 (N.D. Ill., Feb. 3, 1992) (allowing RICO claim to proceed against an independent care provider and its principal whom plaintiff alleged had fraudulently padded their invoices).

Defendant has also sufficiently alleged that Plaintiffs, their subcontractors and independent contractors were an enterprise for RICO purposes. See DT Boring, Inc. v. Chi. Pub. Bldg. Comm'n, No. 15-C-11222, 2016 U.S. Dist. LEXIS 83539, *33–34 (N.D. Ill. June 28, 2016) (plaintiff sufficiently alleged an "enterprise" consisting of a public building commission, its third-party consultants, and its contractors and subcontractors); Tracey v. First American Title Insurance Co., 935 F. Supp. 2d 826, 8823 (D. Md. 2013), (plaintiffs pled RICO enterprise composed of

defendant title insurance company and its title agents, who were "not [defendant's] employees; instead, they are 'non-exclusive agents who work with different title insurance companies…'") See also George v. Urban Settlement Servs, 833 F.3d 1242, 1250 (10th Cir. 2016) (in contrast to suits where alleged enterprise consisted of a parent company and its subsidiary, plaintiffs had successfully alleged a RICO enterprise consisting of Bank of America and a separate entity with whom it contracted to provide certain compliance services, as well as other entities); Williams v. Mohawk Indus., 465 F.3d 1277, 1284 (11th Cir. 2006) (defendant company and its independent contractor third party recruiters constituted a RICO association-in-fact enterprise).

Accordingly, the undersigned respectfully recommends that Plaintiffs' Motion to Dismiss Defendant's RICO counterclaim be denied.

### III. RECOMMENDATION

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that Plaintiffs-Counterclaim Defendants' "Partial Motion to Dismiss Counterclaim Plaintiff's Second Amended and Supplemental Counterclaim" (document #102) be **DENIED**.

### IV. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising

such objections on appeal.  Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties and to the Honorable Robert J. Conrad, Jr.

**SO RECOMMENDED AND ORDERED**.

Signed: November 13, 2019

David S. Cayer
United States Magistrate Judge