UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:18-cv-00273-RJC-DSC

| CS TECHNOLOGY, INC. and | ) | |
| SITEHANDS, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| HORIZON RIVER TECHNOLOGIES, | ) | |
| LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**THIS MATTER** comes before the Court on Plaintiffs' partial motion to dismiss Defendant's Second Amended and Supplemental Counterclaim, (Doc. No. 102), and the Magistrate Judge's Memorandum and Recommendation ("M&R"), (Doc. No. 132).

## I. BACKGROUND[1]

Plaintiffs CS Technology, Inc. ("CS Technology") and Sitehands, Inc. ("Sitehands") provide IT infrastructure management and delivery services. Defendant Horizon River Technologies, LLC ("Horizon" or "Defendant") is a technology services company whose clients have geographically dispersed offices or franchises. (Doc. No. 92, ¶ 8.) One such client was Massage Envy Franchising, LLC ("Massage Envy"). Massage Envy sought to update its technology infrastructure in its clinics across the United States (the "Project"). (Doc. No. 92, ¶ 9.) On or about

---

[1] This Order discusses only the allegations relevant to Defendant's RICO claim that is the subject of Plaintiffs' motion.

July 15, 2016, Horizon and Massage Envy entered into an agreement under which Horizon was to plan and oversee the Project and perform certain on-site work. (Doc. No. 92, ¶¶ 10, 20.) Around the same time that Horizon and Massage Envy entered into their agreement, Horizon and CS Technology executed a Master Services Agreement and Statement of Work (collectively, the "Agreement") under which Horizon subcontracted its on-site work for the Project to CS Technology. (Doc. No. 92, ¶ 21.) CS Technology assigned the Agreement to Sitehands in December 2016. (Doc. No. 92, ¶ 5.)

The parties began work on the Project in August 2016. (Doc. No. 92, ¶ 39.) Plaintiffs' on-site work primarily consisted of procuring certain materials, sending field technicians to install new internet cables and equipment, configuring the devices, and providing on-site support. (Doc. No. 92, ¶¶ 25, 34.) Plaintiffs did not employ their own field technicians. (Doc. No. 92, ¶ 48.) Instead, Plaintiffs used independent contractors supplied by subcontractor companies to perform the on-site work. (Doc. No. 92, ¶ 48.)

In or around March 2017, Horizon discovered billing errors and irregularities that led it to conduct an in-depth review of Plaintiffs' invoices. (Doc. No. 92, ¶ 69.) While the Agreement prohibited Plaintiffs from billing Horizon for field technician travel time and costs, Plaintiffs' contracts with their subcontractors frequently permitted the subcontractors to bill Plaintiffs for such travel charges. (Doc. No. 92, ¶ 55.) Horizon alleges that Plaintiffs fraudulently misclassified travel time and costs as labor hours and billed Horizon for these travel charges without Horizon knowing.

2

(Doc. No. 92, ¶ 109.) Specifically, Horizon alleges that Plaintiffs directed their subcontractors working on the Project to bill travel time and costs as labor hours. (Doc. No. 92, ¶ 110.) In instances where the subcontractors did not bill travel time and costs as labor hours, Plaintiffs converted the travel charges to labor hours prior to sending the subcontractor invoices to Horizon for payment. (Doc. No. 92, ¶ 110.) The disguised travel charges were then included on each monthly invoice that Plaintiffs sent to Horizon. (Doc. No. 92, ¶ 111.)

Horizon alleges that CS Technology fraudulently overbilled JPMorgan Chase & Co. ("JPMorgan"), another CS Technology client, in the same manner. (Doc. No. 92, ¶ 114.) That is, CS Technology's contract with JPMorgan prohibited CS Technology from billing JPMorgan for travel time without JPMorgan's approval. (Doc. No. 92, ¶ 115.) Nevertheless, CS Technology misclassified travel time and costs submitted by its subcontractors and independent contractor technicians as labor hours before submitting the invoices to JPMorgan for payment. (Doc. No. 92, ¶ 115.)

On June 12, 2017, Sitehands stopped all work on the Project, claiming that Horizon owed Plaintiffs more than $1 million for unpaid services. Plaintiffs then initiated this action against Horizon on May 25, 2018. Horizon first asserted counterclaims against Plaintiffs on July 9, 2018. Plaintiffs filed their reply to the counterclaims on August 13, 2018 and then moved for judgment on the pleadings as to Horizon's counterclaim for violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO") on March 28, 2019. Horizon moved to amend its counterclaims to address the alleged deficiencies raised by Plaintiffs. The Court

granted Horizon leave to amend and denied Plaintiffs' motion for judgment on the pleadings as moot, and Horizon filed its first amended counterclaims on June 4, 2019. Plaintiffs moved to dismiss Horizon's amended RICO counterclaim, and Horizon again moved to amend its counterclaims. The Court allowed Horizon to amend and denied Plaintiffs' motion to dismiss as moot.

Horizon filed its Second Amended and Supplemental Counterclaim on August 13, 2019, asserting claims for (1) breach of contract, (2) fraud, (3) negligent misrepresentation, (4) unfair or deceptive acts or practices in violation of N.C. Gen. Stat. § 75-1.1, and (5) violation of RICO. On August 30, 2019, Plaintiffs filed the instant motion to dismiss Horizon's RICO counterclaim pursuant to Rule 12(b)(6). In the M&R, the Magistrate Judge recommended that the Court deny the motion. Plaintiffs timely filed objections to the M&R.

## II. STANDARD OF REVIEW

A district court may assign dispositive pretrial matters to a magistrate judge for "proposed findings of fact and recommendations." 28 U.S.C. § 636(b)(1)(B). The Federal Magistrate Act provides that a district court "shall make a de novo determination of those portions of the report or specific proposed findings or recommendations to which objection is made." Id. § 636(b)(1); Camby v. Davis, 718 F.2d 198, 199 (4th Cir. 1983).

The standard of review for a motion to dismiss under Rule 12(b)(6) for failure to state a claim is well known. A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of a counterclaim. Fannie Mae v. Quicksilver LLC, 155 F. Supp.

3d 535, 542 (M.D.N.C. 2015). A counterclaim attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains enough facts "to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Facial plausibility means allegations that allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678.

At the same time, specific facts are not necessary; the counterclaim need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555. Additionally, when ruling on a motion to dismiss, a court must accept as true all factual allegations contained in the counterclaim. Erickson v. Pardus, 551 U.S. 89, 93–94 (2007). Nonetheless, a court is not bound to accept as true legal conclusions couched as factual allegations. Papasan v. Allain, 478 U.S. 265, 286 (1986). "Courts cannot weigh the facts or assess the evidence at this stage, but a [counterclaim] entirely devoid of any facts supporting a given claim cannot proceed." Potomac Conference Corp. of Seventh-Day Adventists v. Takoma Acad. Alumni Ass'n, Inc., 2 F. Supp. 3d 758, 767–68 (D. Md. 2014). Furthermore, the court "should view the [counterclaim] in a light most favorable to the [claimant]." Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993).

## III. DISCUSSION

Plaintiffs object to the M&R's conclusions that (1) Horizon sufficiently alleges an open-ended pattern of racketeering activity, (2) Horizon sufficiently alleges a

5

distinct enterprise, (3) Horizon's allegations satisfy the heightened pleading requirements of Rule 9(b), and (4) a contractual dispute of the type at issue here may give rise to a RICO claim. After de novo review, the Court concludes that Horizon fails to allege sufficient facts to plead a pattern of racketeering activity.[2]

RICO "does not cover all instances of wrongdoing. Rather, it is a unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity." US Airline Pilots Ass'n v. AWAPPA, LLC, 615 F.3d 312, 317 (4th Cir. 2010). Consistent with this goal, RICO provides "drastic" penalties, including treble damages and attorney's fees, that "are primarily designed to provide society with a powerful response to the dangers of organized crime." Id. To state a RICO claim under 18 U.S.C. § 1962(c), a claimant must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Sedima v. Imrex Co., 473 U.S. 479, 496 (1985). Racketeering activity includes acts of wire fraud. 18 U.S.C. § 1961(1). Where, as here, a RICO claim is based on predicate acts of wire fraud, the claimant "must plead [the] circumstances of the fraudulent acts that form the alleged pattern of racketeering activity with sufficient specificity pursuant to Fed. R. Civ. P. 9(b)." Williams v. Equity Holding Corp., 245 F.R.D. 240, 243 (E.D. Va. 2007) (alteration in original). The circumstances that must be alleged with particularity are "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." Harrison v.

---

[2] Because the Court concludes that Plaintiffs' motion should be granted due to Horizon's failure to sufficiently allege the pattern element, the Court need not address Plaintiffs' three remaining objections.

Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999).

A pattern requires at least two acts of racketeering activity, but two acts alone do not necessarily establish a pattern. GE Inv. Private Placement Partners II v. Parker, 247 F.3d 543, 549 (4th Cir. 2001). "To demonstrate a pattern of such activity, the [claimant] must show continuity plus relationship, i.e., that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." US Airline Pilots Ass'n, 615 F.3d at 318 (quotation marks omitted). "Predicate acts are related if they have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." Menasco, Inc. v. Wasserman, 886 F.2d 681, 683 (4th Cir. 1989) (quotation marks omitted). Here, Plaintiffs do not dispute that the allegations are sufficient to plead that the predicate acts are related.

"'Continuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." H. J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 241 (1989). "Closed-ended continuity may be established by a series of related predicates extending over a substantial period of time." GE Inv., 247 F.3d at 549 (quotation marks omitted). "To allege open-ended continuity, a [claimant] must plead facts that demonstrate a threat of continuity, i.e., facts that give rise to a reasonable expectation that the racketeering activity will extend[] indefinitely into the future." US Airline Pilots Ass'n, 615 F.3d at 318 (quotation marks omitted)

(second alteration in original).  The Fourth Circuit has explained that the pattern element, often difficult to satisfy, "is more than incidental to the operation of the RICO statute."  Menasco, 886 F.2d at 683.  The continuity requirement of the pattern element "demonstrates Congress's desire to limit RICO's application to ongoing unlawful activities whose scope and persistence pose a special threat to social well-being."  US Airline Pilots Ass'n, 615 F.3d at 318 (quotation marks omitted).  The pattern requirement "thus acts to ensure that RICO's extraordinary remedy does not threaten the ordinary run of commercial transactions; that treble damage suits are not brought against isolated offenders for their harassment and settlement value; and that the multiple state and federal laws bearing on transactions such as this one are not eclipsed or preempted."  Menasco, 886 F.2d at 683.  In this regard, the Fourth Circuit has also stated that it is "cautious about basing a RICO claim on predicate acts of mail and wire fraud because it will be the unusual fraud that does not enlist the mails and wires in its service at least twice."  GE Inv., 247 F.3d at 549.

Here, Horizon alleges that CS Technology engaged in an open-ended pattern of racketeering activity (wire fraud) by misclassifying travel time and costs as labor hours on its invoices in order to extract extracontractual profits from its clients.  (Doc. No. 92, ¶¶ 165, 175–76.)  Horizon's counterclaim identifies eleven invoices from August 2016 through June 2017 that allegedly misclassified travel charges as labor hours.  (Doc. No. 92, ¶ 112.)  CS Technology's fraudulent billing as to Horizon, however, necessarily was to end upon completion of the Project and CS Technology's obligations under the Agreement.  Because Horizon cannot demonstrate open-ended

8

continuity when the racketeering activity has a "built-in ending point," US Airline Pilots Ass'n, 615 F.3d at 318, the Court must look to Horizon's allegations of CS Technology's fraudulent billing of non-parties in order to determine whether Horizon sufficiently alleges open-ended continuity, GE Inv., 247 F.3d at 548 (stating that a claimant "may allege acts of related fraud against other victims to establish a pattern of racketeering activity").

Horizon alleges that CS Technology fraudulently billed JPMorgan in the same manner—namely, CS Technology's contract with JPMorgan prohibited it from billing JPMorgan for travel time without JPMorgan's approval, but CS Technology nevertheless misclassified travel time and costs incurred by its subcontractors as labor hours on its invoices to JPMorgan. Horizon alleges that CS Technology submitted the fraudulent invoices to JPMorgan every month at least from January 2016 through September 2016. (Doc. No. 92, ¶ 118.) Horizon further alleges that JPMorgan was CS Technology's client prior to January 2016 and continues to be a client today. (Doc. No. 92, ¶ 119.) Based on this allegation, Horizon alleges upon information and belief that CS Technology started sending fraudulent invoices to JPMorgan shortly after CS Technology began work for JPMorgan in 2013 and Plaintiffs continue to send fraudulent invoices to JPMorgan today. (Doc. No. 92, ¶ 120.) Horizon also alleges upon information and belief that Bank of America Corporation was a victim of CS Technology's fraudulent billing. (Doc. No. 92, ¶¶ 123–26.)

These allegations are insufficient to plead open-ended continuity. As an initial

9

matter, Horizon's general allegation—made upon information and belief—that CS Technology's fraudulent billing of JPMorgan began in 2013 and continues today lacks the necessary particularity to satisfy Rule 9(b). Williams, 245 F.R.D. at 243 ("In order to survive a motion to dismiss a RICO claim, a [claimant] must plead [the] circumstances of the fraudulent acts that form the alleged pattern of racketeering activity with sufficient specificity pursuant to Fed. R. Civ. P. 9(b)." (quotation marks omitted) (second alteration in original)). The same is true for Horizon's conclusory allegations, made upon information and belief, that Bank of America Corporation was a victim of CS Technology's fraudulent billing. Taking the sufficiently pleaded allegations as true, CS Technology fraudulently misclassified travel charges as labor hours on invoices to JPMorgan from January 2016 through September 2016. That CS Technology fraudulently billed JPMorgan in the same manner over a nine-month period, without more, does not give rise to a reasonable expectation that CS Technology's fraudulent billing will continue indefinitely into the future. These allegations are simply insufficient to plead the threat of continuity necessary to an open-ended pattern.

The allegations are also insufficient to plead closed-ended continuity. As stated above, a "closed-ended pattern of racketeering activity involves a course of related predicate acts during a substantial period of time which naturally comes to a close." Chambers v. King Buick GMC, LLC, 43 F. Supp. 3d 575, 599–600 (D. Md. 2014). "There is no specific time period that must be established; however, [t]ime periods of less than two years have failed to provide the requisite period of time."

Dominican Republic v. AES Corp., 466 F. Supp. 2d 680, 690 (E.D. Va. 2006) (quotation marks omitted) (alteration in original). Here, Horizon's allegations that CS Technology fraudulently billed it and JPMorgan from January 2016 through June 2017—an eighteen-month period—is insufficient to plead closed-ended continuity.

As Horizon fails to sufficiently allege the pattern element, its RICO claim must fail.

IV. CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiffs' motion to dismiss, (Doc. No. 102), is **GRANTED** and Horizon's RICO counterclaim is **DISMISSED with prejudice**.

Signed: February 21, 2020

Robert J. Conrad, Jr.
United States District Judge